UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LORI ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>ERGO SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No. 14-379 (JDB) |

## MEMORANDUM OPINION

Lori Robinson alleges that her erstwhile employer, Ergo Solutions, retaliated against her for filing a complaint with the Equal Employment Opportunity Commission and constructively discharged her. Ergo responds by attacking her claims on all fronts: timing of service, failure to state a cause of action, and violating the statute of limitations. But these arguments mostly miss their mark. The Court will grant the motion to dismiss only as to Robinson's claim of constructive discharge, deny the remainder of Ergo's motion, and permit discovery as to Robinson's claim of retaliation.

## BACKGROUND

Throughout Robinson's career at Ergo—since 1996—she had been allowed to work from home. Am. Compl. [ECF No. 2] ¶ 7. After fifteen years, however, things changed. In January 2011, she filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that one of Ergo's owners had made sexual advances toward her. Id. ¶ 8. That June, Robinson was told that she could no longer work from home. Id. ¶ 9. In the absence of any explanation for this change, Robinson surmised that retaliation was the cause. Id. ¶ 9–10.

1

Robinson was also surprised by a negative performance evaluation. Id. ¶ 11, 13. Her June 2010 appraisal had "indicated that her performance was good to outstanding." Id. ¶ 11. But her subsequent evaluation "criticized her use of leave slips [and] her use of leave and cited her for 'inadequate professional behavior' without any basis." Id. ¶ 12.

Concerned that this evaluation, too, was the result of retaliation, Robinson filed suit on March 10, 2014, claiming retaliation and constructive discharge under both Title VII and the D.C. Human Rights Act. On July 8, she filed a (substantially similar) amended complaint. And on July 9, a summons was issued to Ergo. It was served three days later. See Return of Service/Aff. [ECF No. 15].

Ergo has moved to dismiss the lawsuit or, alternatively, for summary judgment. It has also requested sanctions against Robinson.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." Lewis v. Dist. of Columbia, 535 F. Supp. 2d 1, 8 (D.D.C. 2008). To pass the test, "the plaintiff must allege a plausible entitlement to relief, by setting forth any set of facts consistent with the allegations." Id. at 9 (internal quotation marks and citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

At this stage, the Court "must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable interferences therefrom in the plaintiff's favor." Lewis, 535 F. Supp. 2d at 9. But the Court "need not accept as true inferences unsupported

by facts set out in the complaint or legal conclusions cast as factual allegations." Id. And "[a] defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 357 F. Supp. 2d 287, 292 (D.D.C. 2005).

## ANALYSIS

Ergo moves to dismiss Robinson's claims on several theories: that the complaint was served too late under Title VII; that Robinson has failed to make out a claim for either retaliation or constructive discharge; and that the DCHRA statute of limitations bars the suit. The Court agrees with Ergo only as to Robinson's constructive discharge claim.

### I.   SERVICE OF COMPLAINT

Ergo advances, foremost, a highly technical argument—but it boils down to an assertion that it received Robinson's summons only days late. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Robinson narrowly missed that 120-day deadline. She filed her original complaint on March 10, 2014, but neglected to request a summons. The 120-day period to issue a summons, then, expired on July 8, 2014. But instead of serving Ergo by that date, Robinson filed an amended complaint—for which the summons was issued on July 9, see July 9, 2014 Minute Entry [ECF No. 5], and served on July 12, see Return of Service/Aff. [ECF No. 15]. In short, Ergo received the summons and amended complaint immediately after the amended complaint was filed, and only four days after the service deadline for the original complaint.

Ergo attaches greater importance to this problem than one might typically expect. Ergo points out that the original complaint was never served at all.[1] Thus, the contention goes, the amended complaint cannot relate back to it. And the amended complaint, standing alone, was not filed within ninety days of the right-to-sue letter, as required. See 42 U.S.C. § 2000e-5(f)(1). The syllogism, as Ergo sees it, is that failure to ensure service of the summons a few days sooner sinks the case.

Technically, Ergo has a point: the original complaint was not served before the amended complaint superseded it. But had the amended complaint (and its related summons) been filed even days earlier—or if the Court considers the July 10 service of the original complaint—there would be no problem. In its haste to rid itself of this suit, Ergo ignores the broader directive of Rule 4(m) that the Court is not required to dismiss the action entirely. Instead, it has discretion to "order that service be made within a specified time." Fed. R. Civ. P. 4(m). Were service not already effected here, the Court would be inclined to "order that service be made within a specified time"—a time that would, with certainty, have exceeded the short period at issue here.[2] Under

---

[1] Not quite—though it seems to be the result of a mix-up on someone's part. After the summons was issued on July 9, it was served on July 10. But, for whatever reason, the process server served the original complaint, rather than the amended complaint. See Return of Service/Aff. [ECF No. 14]. Another issue: when he served the original complaint, he served an agent of Morris Fischer, Ergo's attorney. See id. On July 9, Fischer had informed Robinson that he was authorized to accept service of process. See Ex. 6 to Def.'s Mot. to Dismiss [ECF No. 11-7] at 2. In briefing this case, Ergo says that Fischer rescinded that authorization only hours later, and so the service doesn't count. See Def.'s Reply [ECF No. 18] at 2. But that may be an overreading of the e-mail Fischer sent a few hours after he agreed to accept service. He does say, in response to that earlier message, that he "stand[s] corrected." See Ex. 6 at 2. But he goes on to explain that, in his opinion, the deadline for service had passed, and that he would be moving to dismiss the case. See id. Thus, it is not obviously clear that he was refusing to be the person Robinson served. Rather, the e-mail could be read to reject the idea of service as unnecessary altogether. In any event, the differences here— two days to four days—are still negligible. It is clear that during this period immediately following the amended complaint, Robinson was trying to effectuate service, and that Ergo knew it was the subject of a lawsuit.

[2] In general, Federal Rule of Civil Procedure 6(b) mandates that "in the absence of any motion for an extension, the trial court has no basis on which to exercise its discretion to grant an extension after a filing deadline has passed." Mann v. Castiel, 681 F.3d 368, 375 (D.C. Cir. 2012) (internal quotation marks, citation, and alterations omitted). But this Circuit has not yet determined whether "this principle applies here, where a rule mandated that the district court exercise its discretion." Id. In any event, the Court "think[s] the motion requirement could have been deemed satisfied by [Robinson's] [m]emorandum in [o]pposition." Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001).

these circumstances, the Court does not find a rigid application of Rule 4(m) to constitute an appropriate means for deciding this case. See Mann, 681 F.3d at 375 ("The Advisory Committee note for Rule 4(m) instructs that the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'").[3]

Ergo's argument concerning service of the original complaint is not without support. Other courts in this circuit have, for instance, expressed concern that permitting service of an amended complaint to toll a running clock "would require that the statute of limitations be tolled indefinitely when a complaint is filed, even if service is not made. Thus, plaintiffs could file an initial complaint, never even attempt to serve it or provide the prospective defendants any notice, and at any later time file an amended complaint that is served within 120 days." Rudder v. Williams, --- F. Supp. 3d ---, 2014 WL 2586335, at *4 (D.D.C. June 10, 2014). But this Court finds that—although this danger may be real in some cases—a four-day extension in this case is hardly the grand marshal to a parade of horribles. The Court therefore exercises its discretion to grant an extension of time to effect service, and consequently denies Ergo's motion to dismiss on that ground under the particular circumstances present here.

---

[3] "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209–10 (D.C. Cir. 2003) (internal quotation marks, citation, and alteration omitted). The Court finds just such excusable neglect here.
  Despite its conviction that this case should not be dismissed on such a thin technicality, however, the Court is unimpressed with Robinson's argument that good cause existed to explain her delay in issuing the summons. Robinson represents that she was confused about who to serve, given Fischer's e-mails on the subject. But such confusion, to the extent it exists, did not arise until July 9, which is already one day past the deadline.

## II. FAILURE TO STATE A CLAIM

Ergo also raises substantive concerns about Robinson's complaint: even if the Court accepts the case, Ergo contends, Robinson has failed to make out claims for either retaliation or constructive discharge. This is correct—but only in part.

### A. RETALIATION

Title VII prohibits employers from retaliating against their employees for "oppos[ing] any practice made an unlawful employment practice" by that statute, or for "participat[ing] in any manner in an investigation, proceeding, or hearing under" the Act. 42 U.S.C. § 2000e-3(a). "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012).[4] Ergo mainly contests the second of these requirements, arguing that Robinson's allegations do not "[c]onstitute a [t]angible or [a]dverse [e]mployment [a]ction." Def.'s Mot. to Dismiss [ECF No. 11] at 5.

The antiretaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). "[T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. This is an objective test, and "cannot immunize th[e] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 68. Still, though: "[c]ontext matters." Id. at 69. "A schedule change in an

---

[4] "The elements of a prima facie case for a DCHRA retaliation claim are the same as those under Title VII." Martin v. Dist. of Columbia, 2015 WL 294723, at *26 (D.D.C. Jan. 23, 2015).

employee's work schedule," for instance, "may make little difference to many workers, but may matter enormously to a young mother with school-age children." Id.

This case presents just such a possibility. In general, it is reasonable to expect that an employee will report to her office for duty. But taking away the benefit of telecommuting after it has been enjoyed for fifteen years is another matter—and one that might well dissuade a reasonable worker from engaging in protected activity. It may well be that Robinson is a young mother with school-age children, whose child-care situation requires her presence at home, or she may have another dependent-care concern, or another situation entirely. At this stage, however, the record is silent on this point. Thus, discovery is appropriate to determine whether—in this context, for this plaintiff—losing the privilege to work from home constitutes an adverse action. [5]

Ergo also contests the third requirement of the retaliation claim: causation. At this stage, however, the "initial burden is not great. [The p]laintiff merely needs to establish facts adequate to permit an inference of retaliatory motive." Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985) (internal quotation marks and citation omitted). "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Id. Ergo challenges this temporal-proximity basis for causation.

In Ergo's view, the five-month span between Robinson's EEOC charge and the end of her telecommuting is simply too attenuated to support an inference of retaliation. The contours of that time limit test, however, are not entirely clear. Compare Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases holding three- and four-month periods "between an

---

[5] Marginal performance reviews, however, such as Robinson received, are hardly uncommon. Indeed, they "typically constitute adverse actions only when attached to financial harms," which are not alleged here. Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008).

employer's knowledge of protected activity and an adverse employment action" insufficient "evidence of causality"), and McIntyre v. Peters, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone."), with Brodetski v. Duffey, 199 F.R.D. 14, 20 (D.D.C. 2001) ("Although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length."), and Castle v. Bentsen, 867 F. Supp. 1, 3 (D.D.C. 1994) (holding that a gap of three to five months "establishes a causal connection and prima facie case sufficient to go to [a] jury"). Thus, the five-month period in this case occupies a gray area. But applying a rigid cut-off would only encourage malfeasant employers to wait until the time limit has just passed before taking retaliatory action. Hence, the Court will not conclude categorically at this stage that causation cannot be established.

And there is—slightly—more to consider than just temporal proximity in this case. Robinson has alleged that "[n]othing had changed in the structure of Ergo Solutions or in its operations to validate th[e] change" in her work location. Am. Compl. ¶ 9. And she further claims that "she was not provided with any explanation indicating the basis for the directive from any of the owners." Id. Taking the allegations in the amended complaint as true, then—and in the absence of any explanation from Ergo—Robinson raises an inference that only retaliatory animus could explain the change. Thus, the Court finds that, for this reason as well, Robinson has made out a prima facie case of retaliation, and that dismissal at this stage—prior to discovery—is not warranted.

B.  C<small>ONSTRUCTIVE</small> D<small>ISCHARGE</small>

As Ergo points out, "a constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign."[6] Taylor v. FDIC, 132 F.3d 753, 766 (D.C. Cir. 1997) (alteration and citation omitted).  Retaliation can be the basis for a constructive discharge claim.  See Carter v. George Washington Univ., 387 F.3d 872, 883 (D.C. Cir. 2004) (noting that constructive discharge claims "must be predicated on a showing of either intentional discrimination or retaliation" (internal citation omitted)). Constructive discharge does not, however, "occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive, even if the employer's misbehavior creates the unpleasantness." Taylor, 132 F.3d at 766.

"The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Penn. State Police v. Suders, 542 U.S. 129, 141 (2004).  This showing requires "something more" than, say, a hostile work environment claim alone.  Id. at 147; see also Bishopp v. Dist. of Columbia, 788 F.2d 781, 790 (D.C Cir. 1986) ("A finding of constructive discharge requires a finding of intentional discrimination plus a finding of aggravating factors that suggest that the complainant was driven to quit." (internal quotation marks and citation omitted)).  That is, "unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking

---

[6] "Because the allegation of constructive discharge is based on a collection of events that precipitated plaintiff's resignation—specifically, the same two events that plaintiff separately alleges were unlawful under Title VII, . . . the Court does not interpret plaintiff's references to constructive discharge as pleading an independent basis for Title VII liability (i.e., a separate actionable adverse action).  Rather, the Court considers the compound allegation to be an assertion ultimately relating to the scope of plaintiff's potential recovery in the event that she prevails on the claim[] of . . . retaliation." Kalinoski v. Gutierrez, 435 F. Supp. 2d 55, 73–74 (D.D.C. 2006).

Title VII law guides in interpretation of the DCHRA.  See Benefits Commc'n Corp. v. Klieforth, 642 A.2d 1299, 1301 (D.C. 1994) ("In interpreting [the DCHRA] we have generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance and have adopted those precedents where appropriate.").

redress." Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997); see also Clark v. Marsh, 665 F.2d 1168, 1173 (D.C. Cir. 1981) ("A Title VII plaintiff must, therefore, mitigate damages by remaining on the job unless that job presents such an aggravated situation that a reasonable employee would be forced to resign." (internal quotation marks and citation omitted)).

What does this mean, in application? "The kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination." Kalinoski, 435 F. Supp. 2d at 78. The allegations here do not approach that mark. As explained above, bad reviews aren't actionable on their own—so they certainly don't constitute "something more" than just a retaliation claim. And although the requirement that Robinson stop working from home may eventually prove to be actionable retaliation, the expectation that an employee will work at the physical workplace can hardly constitute "extreme mistreatment." See id. ("[A] single instance of workplace 'rejection'—e.g., the denial of a promotion or a lateral transfer—if not 'career-ending,' will not constitute a constructive discharge."). Robinson's claim, then, is really no more than a traditional retaliation claim, devoid of any aggravating factors necessary to support a constructive discharge claim. The Court will therefore grant Ergo's motion to dismiss as to constructive discharge.

### III.     DCHRA STATUTE OF LIMITATIONS

Finally, Ergo argues that the DCHRA claims are barred by the statute of limitations. The DCHRA does contain a one-year statute of limitations. See D.C. Code § 2-1403.16(a). And, at first blush, Robinson has not met it: the last event alleged in the amended complaint occurred in June 2011, and she did not file her first complaint in court until March 2014, nearly three years later.

But the statute of limitations also provides for tolling: "The timely filing of a complaint with the Office [of Human Rights], or under the administrative procedures established by the Mayor . . . shall toll the running of the statute of limitations while the complaint is pending." Id. The D.C. Court of Appeals has explained that a plaintiff's "timely filing with the EEOC, of which DC [Office of Human Rights] promptly received a copy under the existing agreement between the federal and local agencies, suffice[s] to toll the limitations period for filing in court." Estenos v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 886 (D.C. 2008); see also Zelaya v. UNICCO Serv. Co., 587 F. Supp. 2d 277, 283 (D.D.C. 2008) (recognizing the Estenos holding).

Robinson filed an EEOC charge on August 5, 2011—on the basis of which she received a notice of right to file suit on December 9, 2013. See Pl.'s Opp'n [ECF No. 17] at 13. Thus, accounting for tolling, she filed well within the one-year DCHRA deadline when this action was initiated on March 10, 2014.[7]

## CONCLUSION

For the reasons set forth above, Ergo's motion to dismiss is granted in part and denied in part. Its motion for sanctions is denied. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2015

---

[7] Ergo has also moved for sanctions under Federal Rule of Civil Procedure 11, arguing that Robinson's position on the DCHRA statute-of-limitations issue is legally frivolous. See Def.'s Mot. for Sanctions [ECF No. 19] at 1. Given that the Court largely agrees with Robinson's position, it will not award sanctions. Moreover, the Court notes that sanctions are particularly inappropriate in this case, where Ergo has ignored legal authority on the statute of limitations question that runs counter to its positions.