UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LORI ROBINSON,

    Plaintiff,

        v.                                          Civil Action No. 14-379 (JDB)

ERGO SOLUTIONS, LLC,

    Defendant.

## MEMORANDUM OPINION

Plaintiff Lori Robinson alleges that her former employer, Ergo Solutions, LLC ("Ergo"), retaliated against her for reporting sexual harassment to the Equal Employment Opportunity Commission ("EEOC") by removing her authorization to telework. Ergo responds that Robinson has not presented any evidence that ending her telework arrangement was a cognizable "materially adverse employment action" that can support a retaliation claim, and argues in the alternative that Robinson cannot demonstrate a causal link between her EEOC complaint and Ergo's decision to end her telework arrangement. Therefore Ergo seeks summary judgment. But the Court concludes that there are genuine issues of material facts, which must be decided by a jury. The Court will accordingly deny Ergo's motion for summary judgment.

## BACKGROUND

Lori Robinson has been employed at Ergo since 1996. Am. Compl. [ECF No. 2] ¶ 7. She was permitted to work from home for her entire 15-year tenure with the company—until 2011. Id. ¶¶ 7–9. In January 2011, Robinson filed a discrimination claim with the EEOC alleging that Jason Henderson, an owner of Ergo, "made inappropriate and unwelcome" sexual advances toward her,

1

had "inappropriate sexual contact with her," and made "humiliating and offensive comments about the anatomy and dress of other women" in Robinson's presence. Id. ¶ 8. Later that year—in either June, July, or September, depending on which account is believed—Ergo informed Robinson that she could no longer telework, and instead was required to report to the office every day. According to Robinson, this decision was communicated to her on July 8, 2011, and was not accompanied by any explanation—leading her to surmise that it was in retaliation for her EEOC complaint. See July 8, 2011 Email from Tanya Lynch to Lori Robinson, Ex. A to Pl.'s Opp'n [ECF No. 33-2] at 1; Am. Compl. ¶ 9. According to Ergo, this decision was communicated to Robinson on September 14, 2011, and was a legitimate business decision made in response to Robinson's repeated absences in July. See Sept. 14, 2011 Letter from Tanya Lynch to Lori Robinson, Ex. 11 to Def.'s Mot. for Summ. J. [ECF No. 31-12] at 1–2.[1]

Robinson filed her complaint in this Court in March 2014, raising several claims related to the alleged sexual harassment. On March 30, 2015, this Court granted in part and denied in part Ergo's motion to dismiss. See Mar. 30, 2015 Mem. Op. [ECF No. 22]. As a result, Robinson's only remaining claim is for retaliation under Title VII of the Civil Rights Act of 1964. Id. at 1. After several months of discovery, Ergo has filed the instant motion for summary judgment. Ergo argues that Robinson has not identified any evidence that she suffered an adverse employment

---

[1] The evidence presented by both parties is messier than it appears here. In plaintiff's statement of disputed facts, she asserts that she was informed that her telework agreement had been terminated in June 2011. See Pl.'s Statement of Disputed Facts [ECF No. 33-1] ¶ 5. In support of this statement, she cites her affidavit, in which she also identifies June 2011 as the relevant date. Robinson Aff., Ex. G to Pl.'s Opp'n [ECF No. 33-2] ¶ 4. The statement of facts, as well as the affidavit, cite the July 8, 2011 email as support for this contention. However, the July 8 email instructs her to report to her office starting the following week (that is, in July). In Robinson's deposition, she identifies September 2011 as the time at which she learned that she could no longer telework via a letter that was hand delivered by the director of Human Resources, Richard Flanagan. See Robinson Dep. Tr. 64:22–66:4. But in her affidavit, she avers that she never received this letter. See Robinson Aff. ¶ 2.

Ergo, meanwhile, claims that the September 14, 2011 letter is the first time that it informed Robinson that she could no longer telework. See Sept. 14, 2011 Letter; Def.'s Statement of Undisputed Facts [ECF No. 31-1] ¶ 13. Ergo claims that this letter was hand delivered by Tanya Lynch, who was Robinson's supervisor and a member of the Ergo senior leadership, rather than by Flanagan. Def.'s Statement of Undisputed Facts ¶ 13. To put it mildly, the facts on these points are rather convoluted.

action as required for a retaliation claim. Ergo also argues that, even if ending her telework agreement is an adverse employment action, it had a legitimate business reason to do so, and Robinson cannot demonstrate a causal link between Ergo's action and her EEOC complaint.

## **LEGAL STANDARDS**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

# ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits not only certain "unlawful employment practice[s]," but also forbids employers from retaliating against employees who "oppose[e] any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). "To prove unlawful retaliation, a plaintiff must show: (1) that [the employee] opposed a practice made unlawful by Title VII; (2) that the employer took a material adverse action against [the employee]; and (3) that the employer took the action 'because' the employee opposed the practice." McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Both parties agree that Robinson meets the first requirement: her EEOC complaint against Henderson is protected by Title VII. Ergo contends, however, that Robinson has not presented any evidence that could support the latter two requirements.

## I. WHETHER ROBINSON SUFFERED A "MATERIALLY ADVERSE ACTION"

Title VII's anti-retaliation provision "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant," that is, those actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). This is an objective test, and "cannot immunize th[e] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 68. The question is whether the "retaliation caused a significant, tangible harm." Walker v. Johnson, 798 F.3d 1085, 1095 (D.C. Cir. 2015). However, "[c]ontext matters," and "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 69. Thus, while a "schedule change in an employee's work schedule may make little difference to many workers," courts must

be sensitive to whether it would make a great deal of difference to a reasonable employee in the plaintiff's situation. See id. Therefore, rather than only look at "specific prohibited acts," a court must assess the ultimate question: whether the employer's alleged action "might well deter a reasonable employee from complaining about discrimination." See id.

Ergo argues that requiring Robinson to appear in person at her office is not a "materially adverse action," unless Robinson can present some specific reason—such as caregiving obligations outside of work—that she must work from home. See Def.'s Mot. for Summ. J. [ECF No. 31] at 4–5. Because Robinson has not presented any specific reasons why telework is particularly necessary for her (such as an obligation to care for a small child), Ergo argues, its decision to terminate her telework arrangement cannot be an adverse employment action. See id. (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57).

It is true that Robinson has not demonstrated specific circumstances outside of work that make going into the office every day a particular hardship. See Robinson Aff. ¶ 6 (appearing in person at her office did not interfere with picking her son up from school). However, a care-taking obligation outside of work is merely one way of assessing whether a change in her schedule is sufficiently adverse. It is not the only way to show that terminating her telework arrangement—after allowing her to telecommute for 15 years—was a sufficiently adverse action that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 57. As this Court explained in its March 30, 2015 Memorandum Opinion, while "[i]n general, it is reasonable to expect that an employee will report to office for duty … taking away the benefit of telecommunicating after it has been enjoyed for fifteen years is another matter—and one that might well dissuade a reasonable worker from engaging in protected activity." Mar. 30, 2015 Mem. Op. at 7. The ultimate question is not one

5

that can be answered as a matter of law at this stage. Rather, the question whether ending a telecommuting agreement after 15 years is sufficiently harmful to dissuade a reasonable employee from complaining of discrimination is a factual determination for a jury to make.

This inquiry is analogous to other scenarios where a jury must decide whether a change in job duties could dissuade a reasonable employee from engaging in protected activity. For example, a "lateral transfer" or "reassignment of duties" can be an adverse action even if it does not result in lower pay. See Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C. Cir. 2010). Whether such a transfer is an adverse action depends on whether it affects the "'terms, conditions, or privileges' of the plaintiff's employment." Id. (quoting Stewart v. Ashcroft, 352 F.3d 422, 426 (D.C. Cir. 2003)). And whether a lateral transfer is an adverse action is a factual question for a jury to decide. Id. Robinson's claim does not fall directly into this framework: she does not allege that this location change affected her duties, and even if that were true, "a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Id. (internal quotation marks omitted) (quoting Brown v. Brody, 199 F.3d 446, 455–56 (D.C. Cir. 1999)).[2] But because the question whether a change in duties is functionally a demotion is a factual one, then the ultimate question here—whether ending Robinson's telework arrangement after 15 years would dissuade a reasonable employee from engaging in protected activity—remains a factual question as well.

## II. WHETHER ERGO'S ACTION WAS "BECAUSE OF" HER EEOC COMPLAINT

Ergo argues, in the alternative, that Robinson cannot demonstrate that her telework schedule was ended "because of" her EEOC complaint. Ergo presents three reasons why it

---

[2] The parties agree that Ergo removed Robinson's oversight duties in August 2011. See Def.'s Statement of Undisputed Facts ¶ 12; Robinson Dep. Tr. 60:22–62:1. However, Robinson has not pleaded that issue as part of her retaliation claim or mentioned it in her opposition to summary judgment.

6

believes Robinson's evidence is not even sufficient to reach the trier of fact: because the delay between the protected action and the claimed retaliation is too long, because Ergo has presented a legitimate non-discriminatory reason for its actions that Robinson has not rebutted, and because Robinson cannot show that her supervisor acted because of the EEOC complaint against Henderson. The Court, however, concludes that Ergo's arguments are instead theories that must be presented to and resolved by a jury, not the Court.

Ergo first argues that the delay between Robinson's EEOC complaint and Ergo's decision to terminate her telework arrangement is too long to support an inference that the former caused the latter. But the timeline itself is disputed. Ergo has presented evidence that Robinson was informed that she could no longer telework on September 14, 2011. See Sept. 14, 2011 Letter. This would create an eight-month gap. Robinson, on the other hand, has produced an email dated July 8, 2011 informing her that she must report to the office the following week. See July 8, 2011 Email. This was only six months after Robinson's EEOC complaint.

As the Court explained in its prior Memorandum Opinion, while a lengthy delay between the protected activity and the adverse action may indicate that the connection is too attenuated to support an inference of retaliation, there is no consensus on just how long is too long. Compare Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (citing cases holding three- and four-month periods "between an employer's knowledge of protected activity and an adverse employment action" insufficient "evidence of causality"), and McIntyre v. Peters, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone."), with Brodetski v. Duffey, 199 F.R.D. 14, 20 (D.D.C. 2001) ("Although courts have not established the maximum time lapse between protected Title VII activity and alleged retaliatory actions for establishing a causal connection, courts generally

7

have accepted time periods of a few days up to a few months and seldom have accepted time lapses outside of a year in length."), and Castle v. Bentsen, 867 F. Supp. 1, 3 (D.D.C. 1994) (holding that a gap of three to five months "establishes a causal connection and prima facie case sufficient to go to [a] jury").

Six months, then, seems to fall into a gray area. And, as the Court explained previously, "applying a rigid cut-off would only encourage malfeasant employers to wait until the time limit has just passed before taking retaliatory action." Mar. 30, 2015 Mem. Op. at 8. Moreover, Robinson points to a series of escalating conflicts with her superiors starting when she filed the EEOC complaint in January 2011 and culminating in her telework schedule being revoked in July 2011. For example, she states that her supervisor, Tanya Lynch, reprimanded her in January 2011 for seeking permission from another supervisor to take vacation, and that she began receiving poor performance reviews at that time as well. See Robinson Dep. [ECF No. 31-11] Tr. 55:18–57:2 (reprimand); Am. Compl. ¶¶ 11, 13.[3] Taken together, then, the Court cannot say that no reasonable juror could infer a causal connection based on a six-month delay between the protected activity and the adverse event, with escalating minor conflicts during that time.

Next, Ergo argues that it has put forth a non-retaliatory reason for terminating Robinson's telework agreement: that Robinson had several unexcused absences between July 1, 2011 and July 22, 2011. "Once an employer offers a [non-retaliatory] reason for its action, 'to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason.'"

---

[3] As explained in this Court's prior opinion, poor performance reviews generally do not constitute adverse actions. See Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008); Mar. 30, 2015 Mem. Op. at 7 n.5. Robinson does not, at this stage, attempt to rely on her performance reviews as adverse actions themselves. Rather, the Court acknowledges that the performance reviews may be evidence that tends to show a pattern of conflict between Robinson and her supervisors between January 2011 and July 2011.

Geleta v. Gray, 645 F.3d 408, 413 (D.C. Cir. 2011) (second alteration in original) (quoting Kersey v. Wash. Metro. Area Transit Auth., 586 F.3d 13, 17 (D.C. Cir. 2009)). One way to make this showing is to demonstrate that the defendant's claimed reason for its action is a pretext. See Allen v. Johnson, 795 F.3d 34, 39–40 (D.C. Cir. 2015); Jones v. Bernanke, 557 F.3d 670, 678–79 (D.C. Cir. 2009). As the D.C. Circuit has explained, "[courts] do not routinely require plaintiffs to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment." Giles v. Transit Emps. Fed. Credit Union, 794 F.3d 1, 13 (D.C. Cir. 2015) (internal quotation marks omitted).

Ergo claims that Robinson's frequent unexcused absences explain her firing, and that Robinson has not presented evidence to show this reason is a pretext. But Ergo's argument is inconsistent with the timeline that Robinson alleges. If Robinson was told on July 8 (and not September 14) to report in person to the office, then any absences occurring after July 8 cannot have been the true reason for Ergo's decision to end her telework schedule. Ergo does point to evidence indicating that it became concerned about her absences in July. See July 26, 2011 Letter from Richard Flanagan to Lori Robinson, Ex. 9 to Def.'s Mot. for Summ. J. [ECF No. 31-10]. And the September 14 letter does refer to these absences as a reason for ending her telework agreement. See Sept. 14, 2011 Letter. But Ergo's argument depends on the answer to a disputed factual question: when, exactly, did Ergo terminate Robinson's telework agreement? And if a jury were to determine that Ergo terminated Robinson's telework agreement in July (rather than September) then Ergo's stated reason for its actions could not be the true reason. "[S]hifting and inconsistent justifications," much less demonstrably false ones, are "'probative of pretext.'" Geleta, 645 F.3d at 413 (quoting EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001)). Hence, not only does Ergo's professed non-retaliatory reason depend on resolving a

factual dispute in its favor, but should a jury decide that fact in Robinson's favor, it would strengthen her argument that Ergo's asserted reasons are pretextual. The Court cannot resolve these disputed facts on summary judgment.

Finally, Ergo contends that because Robinson's supervisor, Tanya Lynch, "had nothing to do with [Robinson's] sexual harassment allegations" against Henderson, a jury could not reasonably infer that Lynch acted in retaliation for Robinson's EEOC complaint. Def.'s Mot. for Summ. J. at 7. The D.C. Circuit has "long held a 'causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity.'" Rochon v. Gonzales, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (alteration in original) (quoting Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985)). To reach Ergo's proposed conclusion, the Court would have to infer that Lynch was solely responsible for Ergo's decision to terminate Robinson's telework and that Lynch was unaware of Robinson's EEOC complaint. The facts supporting those inferences remain, at this stage, in dispute and a court cannot draw inferences in favor of the movant—therefore these issues are not appropriate for resolution on summary judgment.

The July 8 email that, according to Robinson, informed her that her telework schedule had been revoked, was sent from Lynch to Robinson, with two people cc'd: flanagan@georgorehab.com and CourtlandWyatt@aol.com. See July 8, 2011 Email. The parties have not identified who these individuals are, but it seems reasonable to assume that the first is Richard Flanagan, Ergo's Human Resources director. See Def.'s Statement of Undisputed Facts ¶ 1. A reasonable jury could infer from this that Flanagan was involved in the decision to terminate Robinson's telework agreement. In fact, Ergo's own evidence supports this inference. By Ergo's account, Robinson was informed of Ergo's decision in a September 14 letter. That letter also cc'd

Richard Flanagan, and referenced Robinson's absences in July, which Flanagan had sent Robinson a letter about on July 26. See Sept. 14, 2011 Letter; July 26, 2011 Letter. Moreover, it is undisputed that Flanagan knew of Robinson's EEOC complaint, whether or not Lynch did. See Def.'s Statement of Undisputed Facts ¶ 1. Thus, based on the evidence before the Court at the moment, a reasonable jury could infer that the individuals who made decisions about whether or not Robinson could continue to telework knew of her EEOC complaint. Ergo's argument to the contrary cannot prevail at this stage, when the relevant facts are disputed by the parties.

\* \* \*

Hence, all of Ergo's arguments that Robinson cannot show causation are insufficient at this stage of the litigation. The parties have raised genuine disputes of material fact that must be adjudicated by a jury.

## **CONCLUSION**

For these reasons, defendant's motion for summary judgment will be denied. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 5, 2017